GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. H. R. CHERRY.

Decided November 28, 1906.

**1.—Defective Step to Engine—Negligence—Sufficiency of Evidence.**

In a case where an engineer was injured by the giving way of the step to his engine, evidence considered, and held sufficient to require the submission to the jury of the question of negligence on the part of the company, and to support the finding of the jury that the company was negligent.

**2.—Contributory Negligence—Assumed Risk—Charge Approved.**

A charge which, after stating the facts which would authorize a recovery by plaintiff, concluded as follows: "And you further believe from the evidence that the plaintiff was not guilty of contributory negligence and did not assume the risk, then I charge you that your verdict must be for the plaintiff," held not to place a burden on defendant more onerous than was required of it. The impression it conveyed was that the plaintiff could not recover unless the jury believed that he was both not guilty of contributory negligence and did not assume the risk.

**3.—Rule of Company—Duty of Employe—Negligence—Question of Fact.**

By a rule of the company engineers were required, at the end of each run, to fill out a report blank reading as follows: "Note.—Enginemen must report on this form anything wrong about their engines, and they will be held responsible for every defect not reported." Held, under all the facts and circumstances of this case it was a question of fact and not of law whether or not plaintiff was negligent in not discovering the defect, and the question was properly submitted to the jury. The breach of a rule is not negligence *per se* unless it be an act so opposed to the dictates of common prudence that we can say without hesitation or doubt that no careful person would have committed it.

**4.—Expert Testimony—Cause of Injury.**

A medical expert may state his opinion either that the injury was produced by a certain cause, or that it could have been so produced.

**5.—Verdict, not Excessive.**

A verdict for $20,000 can not be held excessive where the plaintiff has

and will continue to suffer great physical pain; his condition become paralytic; his physical ability utterly gone; was 49 years of age at the time of the accident, and was earning from $2,100 to $2,400 a year.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*Baker, Botts, Parker &. Garwood, Newton & Ward* and *W. B. Teagarden,* for appellant.—The court erred in refusing, at the request of appellant, to peremptorily instruct the jury to return a verdict in its favor, because the plaintiff only proved an accident and an injury to himself and failed to show that the accident and injury were occasioned by the negligence of defendant; there being no facts or circumstances shown by the evidence from which defendant's negligence could be reasonably inferred. 2 Labatt's Master and Servant, sec. 833; Black's Law and Prac. in Accident Cases, sec. 181; Buswell's Law of Personal Inj., sec. 111a; Houston & T. C. Ry. Co. v. Barrager, 14 S. W. Rep., 242; Broadway v. San Antonio Gas. Co., 24 Texas Civ. App., 603; Trinity County Lumber Co. v. Denham, 85 Texas, 56; San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 284; Texas Cent. Ry. v. Burnett, 80 Texas, 536; McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 169; Washington v. Missouri, K. & T. Ry., 90 Texas, 319; Texas & N. O. Ry. v. Crowder, 63 Texas, 502; Patton v. Texas & P. Ry., 179 U. S., 658; Sack v. Dolese, 137 Ill., 130; DeGraff v. New York C. & H. R. Ry. Co., 76 N. Y., 125; Brownfield v. Chicago, R. I. & P. Ry. Co., 77 N. W. Rep., 1038; Peoria D. & E. R. Co. v. Hardwick, 48 Ill. App., 562; Kincaid v. Oregon S. L. R. R., 29 Pac. Rep., 3; Mobile & O. Ry. v. Thomas, 42 Ala., 672; Dobbins v. Brown, 119 N. Y., 188; Robinson v. Wright, 94 Mich., 283.

Presumption that master did his duty: McMillan v. Saratoga & W. Ry., 20 Barb., 449; Rose v. Boston & A. Ry., 58 N. Y., 217; Davis v. Detroit & M. Ry., 20 Mich., 105.

The court erred in the first paragraph of the charge, wherein the court affirmatively submits to the jury the various issues of fact upon which plaintiff is entitled to recover, and at the end thereof concludes with the words: "And you further believe from the evidence that plaintiff was not guilty of contributory negligence and did not assume the risk, then I charge you that your verdict must be for the plaintiff," in this: That the jury were charged that the plaintiff was entitled to recover on the facts stated unless the jury should find that plaintiff was guilty of contributory negligence and assumed the risk, whereas, plaintiff was not entitled to recover if he was either guilty of contributory negligence or if he assumed the risk; that in order to have defeated a recovery upon the part of the plaintiff the jury, by the instruction, were charged that the plaintiff was entitled to recover unless the plaintiff was guilty of contributory negligence and assumed the risk. Davis v. Missouri, K. & T. Ry. Co., 17 Texas Civ. App., 199; Newcomb v. New York Cent. Ry. Co., 81 S. W. Rep., 1079; San Antonio & A. P. Ry. Co. v. Bennett, 76 Texas, 155; International & G. N. Ry. Co. v. Kuehn, 11 Texas Civ. App., 21; Spencer v. Oustott, 3 Texas, 149; Missouri, K. & T. Ry. Co. v. Rodgers, 89 Texas, 675.

It was reversible error for the court in its charge to have submitted to the jury the issue that they were authorized to return a verdict in favor of the plaintiff if the defendant knew of the defective condition of the engine step and stem, when there was not even a scintilla of testimony to establish that defendant or any of its employes knew that said engine step and the stem thereof were in a loose, defective and insecure condition before the accident, and that in thus submitting these issues to the jury without any evidence whatsoever tending to raise them, was erroneous, misleading and prejudicial to defendant. Parish v. Galveston, H. & S. A. Ry. Co., recently decided by this court at the present term, not yet reported; Gulf, C. & S. F. Ry. v. Kizziah, 86 Texas, 81; Railway Company v. Lewis, 63 S. W. Rep., 1091; Railway Company v. French, 86 Texas, 96; Western U. Tel. Co. v. Burgess, 60 S. W. Rep., 1024; Enc. of Pldg. and Prac., vol 11, p. 174.

The written rule offered in evidence by appellant places the duty of inspecting the engine upon appellee. If appellee failed to inspect the engine, as it was his duty to do, and if by the inspection of the engine he could have discovered the defects in the engine which resulted in his injury, then his failure to make such inspection, as matter of law, caused him to assume all risk of danger to himself by reason of defects in the engine step which it was his duty by the inspection to have discovered. The court committed error in the charge by submitting the question as one of fact as to contributory negligence instead of instructing the jury, as matter of law, that under the circumstances, appellee assumed all risk of such defects in the step as he could have discovered by a proper inspection. Louisville & N. Ry. Co. v. Pearson, 97 Ala., 211; same case, 12 So. Rep., 176; Texas & F. S. Ry. Co. v. Hartnett, 8 Texas Ct. Rep., 161; Texas & N. O. Ry. Co. v. Bingle, 91 Texas, 287.

The rule of appellant placing the duty of inspection upon appellee being in writing, it was the duty of the court to have construed the rule and to have charged the jury upon the legal effect of the rule, and the court erred in submitting as a question of fact to the jury the issue as to whether the duty of inspection by the rule was imposed upon appellee instead of instructing that as a matter of law the rule imposed such duty upon appellee. Texas & F. S. Ry. Co. v. Hartnett, 8 Texas Ct. Rep., 161; San Antonio v. Lewis, 9 Texas, 71; Letcher v. Morrison, 79 Texas, 242.

The written rule of appellant offered in evidence imposed upon appellee the duty of inspecting the engine, its step and fastenings. The rule being in writing, the court erred in permitting appellee, over appellant's objections, to testify: "It wasn't my duty to inspect the step; to look at the engine and step, and if I saw anything out of fix, it was my duty to report it, but I was not an inspector; it wasn't my duty to inspect"—because the written rule was the best evidence of appellee's duty, and he could not contradict or vary this written rule by parol evidence, there being no testimony that the rule was abrogated by non-enforcement. Louisville & N. Ry. Co. v. Pierson, 97 Ala., 211, 12 So. Rep., 176; Texas & F. S. Ry. Co. v. Hartnett, 8 Texas Ct. Rep., 161; Texas & N. O. Ry. Co. v. Bingle, 91 Texas, 287.

The testimony of Dr. Frank Paschal was inadmissible as not being the subject of expert testimony and being an invasion of the province of

the jury. Taylor v. Grand Av. Ry. Co., 84 S. W. Rep., 876-7; Gutridge v. Missouri Pac. Ry., 94 Mo., 472; International & G. N. Ry. Co. v. Goswick, 98 Texas, 479-480.

*Perry J. Lewis* and *H. C. Carter,* for appellee.

JAMES, CHIEF JUSTICE.—Plaintiff Cherry alleged that while he was operating one of defendant's locomotives as engineer on a passenger train running towards San Antonio, that at Schulenburg it became necessary for him to descend therefrom and in doing so the step gave way and fell and plaintiff was thrown with great violence to the ground, causing him the serious and permanent injuries alleged. That through defendant's negligence said engine step and the stem on which it was fixed was loose, defective and insecurely fastened so that it was dangerous when used for the purpose for which it was provided; that defendant had negligently failed to properly inspect said step and stem, and asked for damages in the sum of $40,000.

The defendant answered by general denial and plea of contributory negligence. There was a verdict for $20,000.

The first and second assignments are the same, one insisting that a peremptory instruction asked by defendant should have been given; the other that a new trial should have been granted, on account of there being no testimony from which negligence on the part of defendant could be found or reasonably inferred.

The testimony relative to the circumstances of the occurrence was that of plaintiff. He stated that he undertook to get off the engine to look it over and oil it. He had to step down about 15 inches from the deck of the tank and when he put his weight on the step it went down, struck the back of his head and that was all he remembered until somewhere about Luling. That he took the torch and oil can in his right hand and used his left hand to take hold of the cab to assist him to step down, and that he fell and struck, that when he held the torch down the step looked all right, that he stepped down with his left foot and when he stepped on it it went down, step and stem went down, that broke his handhold loose from the cab and he went down and was thrown over and fell on his head. When he struck he became unconscious and remained so until he got to Luling.

He described the step (quoting from appellant's brief) thus: "On being asked to describe the step on the engine that caused him to fall he answered: 'If a person is not accustomed to it, it is a pretty hard matter to describe it—take a person unaccustomed to see these things, it is not an easy matter; that was hung like this (indicating). This is that tailplate of the engine, then the step is fastened through the tailplate of the engine with that thing—this being the stem—that's the stem that was—that stem is an inch and an eighth in size—this stuck down here and at the bottom this step is fastened on—that's fastened through the back of the step with a set-screw here; this goes up through the tailplate, and is supposed to be fastened, I imagine, I think so, with the end on top threaded for a nut, threads on this end of the stem and a nut screwed down on to it; and over this stem sets a hollow pipe—that the top of this step projects into and there is nothing visible except the sides

of the six-sided nut, hexican nut, the top of it you can't discern it because the top of it sets down over the stem. The pipe is set there as near as I can tell to hold the nut to keep it from working up. This pipe goes up through a cast iron; it is a kind of oval shape cast iron that forms the deck and running board of the engine; it runs into this cast iron, and is made fast to this cast iron about 15 inches up, about 15 inches long. If the step was put on properly it would stay there until it was taken off; until some one took it off; it would require a wrench to take it off if it was put on proper. The proper way to put these steps on so they will not come off—the way I always saw it done in regard to that, they would slip a nut into this pipe under what you call the tailplate on the engine, they would slip that nut in there and turn the stem and step and all right around until they screwed it up and then put your wrench on that nut and you can turn it enough to tighten it; and they can be held on there so they will not come off by battering the head or splitting a thread. As near as I can tell the step and the stem all came down; the stem and the step; the stem that went up through the tailplate all came down. I don't see where anything else caused it, only it worked loose from the nut and ran out and fell. I don't see how it could come down unless it worked loose from the nut. I don't see any other possible way for it to come down. Before the step could drop down the step and stem had to become detached from the nut that held it. The step is put on an engine to be used in getting up and down on the engine, and if it is properly secured it will ordinarily sustain a man's weight and supposing it is improperly secured it will not sustain your weight; it will go down. I had no notice of the condition of the steps at the time I used it. I had no notice at all; supposed to be all right; supposed to be in perfect condition.' "

He testified that he did not know the condition of the step, that had it been securely fastened when it left Houston it could not have come down at Schulenburg, that he knew if the step was properly fastened it would not have given way and that it could have been tested for such defect by hammer and wrench. That defendant maintained inspectors at Houston for the purpose of inspecting engines before starting them out.

The question simply is: Was the above sufficient to make a *prima faciae* showing of negligence on the part of defendant? There was other evidence in the case not stated above, because it seems to us it goes rather to other questions, such as plaintiff's contributory negligence. If defendant was negligent the evidence of it exists in the above stated testimony.

The evidence we think was sufficient. Defendant did not see fit to introduce any testimony to counteract what plaintiff stated, being evidently satisfied to let the evidence stand with its full force and effect, and it is entitled to that effect. To hold that this shows negligence, would not be giving expression to the doctrine of *res ipse loquitur*. It showed that the step gave way, plaintiff described the mechanism of the step, the manner of its fastenings and explained that it could not have fallen as it did from any other cause than that it worked loose from the nut, which was a condition that could have been discovered and remedied by a proper inspection. That if this had been done at Houston it would not have fallen at Schulenburg. That defendant maintained

machinist inspectors at Houston and other places who were required to make a thorough inspection and are supposed to go over everything with an engine after a trip.

In McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168, a recovery was permitted by a brakeman, expert witnesses testifying that if the rails had been properly loaded on the car, the one that fell therefrom and injured the plaintiff, would not have fallen. If one expert, instead of several in that case had so testified, the result would have been the same. We are therefore at a loss to see how it can be said in this case that the testimony of the plaintiff (who is a competent witness) who was shown to have had long and extensive experience with engines and presumably understood their construction, does not make a *prima faciae* case of negligence. See Mason v. Tower Hill Co., 32 N. Y. Supp., 36.

The third assignment brings into question this charge: "If you believe from the evidence that on or about the 17th day of March, 1903, the plaintiff, H. R. Cherry, was in the employ of the defendant in the capacity of a locomotive engineer, and that on said date he was in the performance of his duty upon an engine running westward toward the city of San Antonio, and that, when said engine reached the station of Schulenburg, it became plaintiff's duty to alight from said engine, and that, in order to do so, it was his duty to use one of the steps upon said engine and that said step was provided by the defendant for the purpose of alighting from the engine; and if you further believe from the evidence, that as plaintiff stepped upon said step, the step and stem upon which it was fixed came off and gave way and caused plaintiff to fall, and that thereby he sustained any of the injuries alleged in his petition; if you further believe from the evidence that the said step and the stem upon which it was fixed was loose, defective and insecurely fastened, and that by reason thereof the said step and stem thereof came off with the plaintiff and caused him to fall, if you find it did come off and cause him to fall, and if you further believe from the evidence that the defendant knew, or by the exercise of ordinary care would have known that said step and the stem thereof was in a loose, defective and insecure condition, if you find it was in such condition, and that it was negligence on the part of the defendant to permit said step and the stem thereof to be in such condition, if it was in such condition, and that such negligence, if any, directly caused plaintiff's injuries, if any, and you further believe from the evidence that the plaintiff was not guilty of contributory negligence and did not assume the risk, then I charge you that your verdict must be for the plaintiff."

The criticism is that the words: "and you further believe from the evidence that plaintiff was not guilty of contributory negligence and did not assume the risk, then I charge you that your verdict must be for plaintiff," placed a burden on defendant more onerous than was required of it; that the charge should have read: "was not guilty of contributory negligence *or* did not assume the risk, because defendant was entitled to a verdict on either one of such findings." The charge in our opinion was not subject to be understood as appellant contends. The impression it conveyed was that plaintiff could recover unless the jury believed that he was both not guilty of contributory negligence and did not assume the

risk. Under the charge they had to find both in order to find for plaintiff.

The fourth complains of the following expression in the first paragraph of the charge: "And if you further believe from the evidence that the defendant knew, or by the exercise of ordinary care would have known that said step and the stem thereof were in a loose, defective and insecure condition, etc.," because there was no evidence of knowledge thereof by defendant or any of its servants; and it was therefore submitting an issue not in the case. Any tendency this may have had to mislead the jury was removed by charges that were given at defendant's request in such plain terms as expressly precluded any verdict for plaintiff, if defendant had exercised ordinary care in reference to discovering the defect.

The fifth assignment complains of the following charge: "You are further charged that if you find from the testimony that it was the duty of the plaintiff, under the rules and customs governing plaintiff in the discharge of his duty as an engineer in defendant's service to look over and inspect his engine and make report at the end of his run, in writing, of all defects in and about his engine, and, you further find that plaintiff failed to perform said duty, if any, and that if he had performed such duty he would have discovered the defect, if any, in the fastening of said step, and you further find in failing to discover said defect, if any, in the fastening of said step, should you find that he did fail to discover it, plaintiff was guilty of negligence, and that such negligence, if any, either proximately caused or contributed to his injury, if any, then plaintiff can not recover, and you will so find."

The proposition is that under the evidence the court erred in submitting this matter as one of fact. The evidence relied on is the report blank which had been filled out and filed by plaintiff upon his arrival at Houston, which at the bottom and below the place for the engineer's signature, in fine print stated: "Note—Enginemen must report on this form anything wrong about their engines, and they will be held responsible for every defect not reported. No attention will be given to reports not signed by enginemen." These blanks were not placed in the possession of the enginemen, but were kept in the roundhouse to be filled out by enginemen at the end of the trip. There was a book of rules furnished plaintiff, as it was to all engineers, prescribing their duties. This book was not placed in evidence, but plaintiff testified that these blanks did not form a part of the book of rules, but in reference to his duties he testified that it was not his duty to inspect the step, he was not an inspector, that it was his duty to look over the engine and if he saw anything out of fix to report it. That he had looked it over as usual at Houston before starting on this trip and did not discover anything wrong with this step, that such a defect might have been tested by hammer and wrench and that he did not make that kind of inspection. The testimony indicates that plaintiff was not aware of the notation in small print, until the report was handed him on the stand.

The proposition in substance is that if it was plaintiff's duty to inspect the engine and by inspection he could have discovered this defect in the step, failing to perform such duty he was negligent as a matter of law.

We shall not enter into a discussion of the question whether or not the duty, imposed by the relation upon the master, of inspecting such in-

strumentalities as an engine, can be shaken off by the master imposing the duty upon the employes, or to what extent this may be done.

In Gulf, C. & S. F. Ry. v. Larkin, 82 S. W. Rep., 1027, the Supreme Court states that in reference to such an instrument as an engine the law imposes on the master the duty of inspection in order to maintain it in proper condition for use, because it is a matter of common knowledge that there is danger in its use and that the persons who use it oftentimes do not have the necessary information to detect its defects, or opportunity to examine it before use.

Clearly the master can not impose the duty of inspection upon the servant, to whom he owes such duty further than the servant may be able to perform it consistently with the performance of his other duties, or with the skill and ability which he possesses. This is enough to determine in order to dispose of the proposition advanced.

Plaintiff used the engine in the night time, his runs being night runs. While out on the road the stops at stations were generally too short to admit of his getting down from the engine for any purpose. Sometimes it stopped long enough to enable him to get out and examine and oil the machinery. It was delivered to him about an hour before his trips begun, supposed then to have been thoroughly inspected and in proper condition for the road, and it was his duty during that time to look it over. According to testimony in the case the defect in question was not one which was readily discernable, that it took a mechanical inspection to discover it and that it might have been tested by hammer and wrench.

Under these circumstances the question whether or not plaintiff was negligent in not discovering the defect, was not one of law. It was certainly one for the jury, even assuming that the report card had been promulgated and had the effect of casting the duty upon him to discover all defects which an inspection would have revealed. It would have been for them in this connection to determine the fact whether or not his other duties and the circumstances under which they were performed gave him reasonable time and opportunity to perform such an inspection as this would have involved, and this consideration clearly would enter into the question of his negligence. It has frequently been held in this State that the breach of a rule is not negligence per se unless it be an act so opposed to the dictates of common prudence that we can say without hesitation or doubt that no careful person would have committed it. (San Antonio & A. P. Ry. v. Connell, 66 S. W. Rep., 246; Gulf, C. & S. F. Ry. v. Connell, 5 Texas Ct. Rep., 675.) This disposes also of the sixth assignment.

The matter referred to in the seventh assignment was one of omission which called for a request for further instruction, if any was desired. The eighth assignment is overruled for the reason that prior to the exception taken to certain of his testimony, plaintiff had given substantially the same testimony without objection.

The ninth and tenth assignments complain of certain testimony of Dr. Paschal, as not being the subject of expert testimony. The point urged is that a physician can not be allowed to state his opinion either that the injury was produced by traumatism, or that it could have been so produced. Appellant indicates that it may be that it was permissible for the witness to state that the injuries might be produced by traumat-

ism, but certainly his statement that they were so produced was an invasion of the province of the jury, who were there to decide that very question. We conclude the point is not well taken. The very question was passed on by this court in Tyler S. E. Ry. v. Wheeler, 41 S. W. Rep., 518, and the ruling there made we understand was affirmed by the Supreme Court. Same case, 91 Texas, on page 360. See also Galveston, H. & S. A. Ry. v. Williams, 62 S. W. Rep., 808; St. Louis & S. W. Ry. v. Laws, 61 S. W. Rep., 498.

The eleventh and twelfth assignments which complain of the overruling of the motion for new trial, we overrule, our conclusions of facts, in view of the verdict, being there was evidence indicating that the defect in the step was not obvious, that plaintiff was not aware of it, that it was not such a defect as must necessarily have been observed by him in the prosecution of his work, that plaintiff under the circumstances was not guilty of contributory negligence in not having discovered it, and in not having reported it, and that defendant was guilty of negligence in permitting it to be in the condition it was in.

We are unable to declare the verdict excessive. His great physical pain suffered and to be suffered, his paralytic condition, his physical ability utterly gone, as a witness expressed it, the permanency of such condition, all the result of this occurrence, taken in connection with the fact that he held the lucrative position of engineer, and had been serving in that capacity with defendant since 1889, and was 49 years old at the time of the accident, and had been receiving for the previous ten years between $2,100 and $2,400 a year, warrant the amount for which the verdict was returned.

*Affirmed.*

Writ of error refused.